THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ROBERT R. SASS, Defendant-Appellant.

Fourth District   No. 4—85—0863

Opinion filed June 3, 1986.

Kevin P. Fitzgerald, of Thomson, Weintraub & Thompson, of Bloomington, for appellant.

Donald D. Bernardi, State's Attorney, of Pontiac (Kenneth R. Boyle, Robert J. Biderman, and Michael L. Shevick, all of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE MORTHLAND delivered the opinion of the court:

The defendant, Robert R. Sass, was convicted of driving while driver's license revoked in violation of section 6—303(a) of the Illinois Vehicle Code (Code) (Ill. Rev. Stat. 1983, ch. 95½, par. 6—303(a)). He was sentenced to one-year conditional discharge, ordered to serve a seven-day term of incarceration in the Livingston County jail, and fined $100 plus court costs. On appeal, defendant contends he was improperly charged and convicted under section 6—303.

In March of 1982, the defendant, then a resident of Illinois, had his driver's license revoked pursuant to section 6—205(a)(2) of the Code (Ill. Rev. Stat. 1981, ch. 95½, par. 6—205(a)(2)) following his conviction for operating a motor vehicle while under the influence of alcohol. That revocation was extended to September of 1983 upon his conviction in September 1982 for driving while license revoked; he was therefore not eligible to be reissued an Illinois driver's license until September 1983. In December of 1982, the defendant applied for, and was denied, a restricted driving permit. In January of 1984, after the period of revocation had expired, his application for a license was likewise denied. At some point during 1984 the defendant moved to Wisconsin, where he was issued a valid Wisconsin driver's license.

The arrest and charge which is the subject of this appeal occurred in Illinois on March 12, 1985. The defendant was apparently stopped for a safety equipment violation; a routine check indicated the defendant's Illinois license was still revoked. He was therefore ticketed for a violation of section 6—303(a) of the Code. The defendant's Wisconsin driver's license was valid and in effect at that time, as was the order of revocation against his Illinois license entered by the Illinois Secretary of State.

At trial, the defendant challenged the sufficiency of the charging instrument, claiming he should have been charged instead with a violation of section 6—210 of the Code (Ill. Rev. Stat. 1981, ch. 95½, par. 6—210) concerning nonresidents with revoked Illinois licenses. However, the trial court refused to accept this argument and defendant was convicted of violating section 6—303(a). Again, he was sentenced to seven days in jail, fined $100 plus costs, and given one year of conditional discharge.

■■ Defendant presents the same contention on appeal: that he was improperly charged and convicted of violating section 6—303(a). However, defendant's novel argument must fall upon a review of the overall statutory scheme and the relevant case law.

Section 6—303(a) reads:

"Any person who drives or is in actual physical control of a motor vehicle on any highway of this State at a time when such person's driver's license, permit or privilege so to do or the privilege to obtain a driver's license or permit is revoked or suspended as provided by this Code or any other law, except as may be specifically allowed by a restricted driving permit issued under this Code, shall be guilty of a Class A misdemeanor." (Ill. Rev. Stat. 1983, ch. 95½, par. 6—303(a).)

Moreover, section 6—303(c) provides that any person convicted under

this section, whose underlying revocation was the result of a conviction for driving under the influence in violation of section 11—501 (Ill. Rev. Stat. 1983, ch. 95½, par. 11—501), may be ordered to serve a minimum seven-day term of imprisonment. Ill. Rev. Stat. 1983, ch. 95½, par. 6—303(c)(1).

The statute under which defendant advances he should have been charged, section 6—210, states in relevant part:

> "No operation under Foreign license during suspension or revocation in this State. Any resident or nonresident whose driver's license or permit or privilege to operate a motor vehicle in this State has been suspended or revoked as provided in this Act shall not operate a motor vehicle in this State:
> * * *
> (2) After such revocation until a license is obtained when and as permitted *under this Act*, except as permitted by a restricted driving permit issued under the provisions in paragraph (a) of Section 6—205 of this Act." (Emphasis added.) Ill. Rev. Stat. 1983, ch. 95½, par. 6—210.

Defendant contends that section 6—303(a) is a general statute directed at any driver who operates a vehicle on an Illinois highway while his driver's license is revoked. On the other hand, defendant continues, section 6—210 is applicable to a more limited class of drivers, including nonresidents with suspended or revoked Illinois licenses who have obtained valid foreign licenses. Because it is generally accepted that a specific statute controls over a general statute (*Sierra Club v. Kenney* (1981), 88 Ill. 2d 110, 429 N.E.2d 1214; *Emulsicoat, Inc. v. City of Hoopeston* (1981), 99 Ill. App. 3d 835, 425 N.E.2d 1349), defendant reasons that section 6—210 was the appropriate charging statute here, and his conviction under 6—303 was error. As further support for his contentions, defendant calls our attention to the elementary rule of statutory construction that penal statutes are to be strictly construed against the State and in favor of the accused. *People v. Rink* (1983), 97 Ill. 2d 533, 541, 455 N.E.2d 64, 68.

Continuing, defendant points to the general penalty provision of the Code, which makes it a petty offense punishable by a maximum fine of $500 to violate any section of the Code which does not specifically declare the offense articulated therein to be a misdemeanor or a felony. (Ill. Rev. Stat. 1983, ch. 95½, par. 6—601(a), (b).) As section 6—210 by its terms does not specifically allow for prosecution as a felony or misdemeanor, defendant maintains that the general penalty provision applies to any offense under this section. It is therefore defendant's belief that a court may only mete out a fine for any viola-

tion of section 6—210. According to the defendant, this comports with the lesser culpability of an offense under 6—210, where a driver possesses a valid license issued by the State of his residence and innocently believes that he may legally drive in other States. In essence, defendant does not dispute that he might otherwise be properly convicted under the Code; however, he believes section 6—303(a) was inappropriate for doing so. See *People v. Johnson* (1983), 115 Ill. App. 3d 987, 451 N.E.2d 28.

In response, the State asserts that section 6—210 is not penal in nature, but is by its terms regulatory or advisory to assist the Secretary of State. Next, the State contends that even if the defendant could have been charged under 6—210, it is nevertheless proper to prosecute him for a violation under a second statute which provides for a more severe penalty. However, we rest our conclusion upon a literal reading of the relevant statutory scheme; we do not necessarily address these issues.

Again, section 6—205 provides for mandatory revocation based upon certain enumerated offenses. The continuing nature of this revocation sanction is reflected in section 6—208 (Ill. Rev. Stat. 1983, ch. 95½, par. 6—208), which also outlines the procedures whereby a former licensee may apply for a license after the revocation period has run. Pursuant to section 6—208, one who has had his license revoked is not entitled to have that privilege automatically restored upon the expiration of the revocation period; that former licensee must apply for a license and, if approved, pay a reinstatement fee. (*People v. Johnson* (1983), 115 Ill. App. 3d 987, 451 N.E.2d 28.) However, the Secretary of State is only empowered to issue a license to an applicant if he is satisfied, upon investigation, that to grant the privilege to drive "will not endanger the public safety or welfare." Ill. Rev. Stat. 1983, ch. 95½, par. 6—208; see also Ill. Rev. Stat. 1983, ch. 95½, par. 6—103(3).

■ During revocation or suspension, a former licensee who operates a motor vehicle on any highway in this State is subject to criminal liability. (Ill. Rev. Stat. 1983, ch. 95½, par. 6—303(a).) Should any person be so convicted, the period of suspension or revocation may be extended (Ill. Rev. Stat. 1983, ch. 95½, par. 6—303(b)), and, in certain instances, a minimum seven-day term of imprisonment will be imposed (Ill. Rev. Stat. 1983, ch. 95½, par. 6—303(c)). Further, section 6—210, when read in conjunction with these other relevant provisions of the Code, prohibits any person whose license has been revoked in Illinois from driving in this State, even under a foreign license, "until a license is obtained when and as permitted under this Act." Ill. Rev.

Stat. 1983, ch. 95½, par. 6—210(2); see also *People v. Suddoth* (1964), 52 Ill. App. 2d 355, 358, 202 N.E.2d 120, 123.

■ There are only two ways under the Code of which we are aware that a former licensee may obtain a new license after revocation. The first is clearly pursuant to section 6—208. The second is as permitted under the Driver License Compact (the Compact) (Ill. Rev. Stat. 1983, ch. 95½, par. 6—700 *et seq.*), which is incorporated and made an effective part of our Code.

We note that the Compact has as its stated purpose compliance with motor vehicle operation regulations as well as making more equitable the reciprocal recognition of driver's licenses, and the eligibility thereto. (Ill. Rev. Stat. 1983, ch. 95½, par. 6—701(b).) Under the Compact, any party State, upon the receipt of an application for a license to drive, shall ascertain whether the applicant ever held a driver's license from another party State. (Ill. Rev. Stat. 1983, ch. 95½, par. 6—704.) A party State may not issue a license after revocation in another State unless one year has elapsed since the revocation, and the issuing authority determines it will be safe to do so. Ill. Rev. Stat. 1983, ch. 95½, par. 6—704(2).

Thus, in *People v. Klaub* (1985), 130 Ill. App. 3d 704, 474 N.E.2d 851, the defendant's Illinois license was revoked while he was a resident of Illinois following a conviction for driving under the influence of drugs. He was not eligible until May of 1983 to be reissued an Illinois driver's license. In the interim, the defendant moved to Indiana and obtained an Indiana's driver's license. In November of 1983, the defendant was arrested in Illinois for driving while his Illinois license was revoked. The defendant had not applied for reissuance of his Illinois license pursuant to section 6—208, and it remained revoked, although his Indiana license was still current and presumed valid.

The court in *Klaub*, though, noted that Indiana is a party to the Compact. The court equated the Compact's objective of ensuring that only safe and qualified drivers be entitled to operate motor vehicles as consistent with that of our own Code. Moreover, the court found the Compact provides for essentially the same safeguards as section 6—208 concerning the issuance of licenses to those who have previously had their licenses revoked. As a result, in construing sections 6—208, 6—210 and 6—303 together, the *Klaub* court found:

> "After the defendant's Illinois license was revoked, section 6—210 of the Code prohibited the defendant from driving in Illinois 'until a license is obtained when and as permitted under [the Code].' [Citation.] However, the Driver License Compact is part of the Code. Therefore, when the defendant was issued a

valid Indiana license he was issued a license *satisfying the requirement of section 6—210.*" (Emphasis added.) (*People v. Klaub* (1985), 130 Ill. App. 3d 704, 707, 474 N.E.2d 851, 854.)
The court thus concluded the defendant could not be convicted of violating section 6—303.

Conversely, in *People v. Jones* (1981), 100 Ill. App. 3d 831, 426 N.E.2d 1214, the defendant, also a former Illinois resident whose Illinois license had been revoked, subsequently moved to Texas and obtained a valid license there. Upon returning to this State, he was arrested for driving while his Illinois license was revoked. This court noted the defendant had not applied for restoration of his revoked Illinois license under section 6—208. Further, Texas was *not* a party State to the Compact. This court thus determined that the defendant's Texas license, however obtained, was irrelevant to the matter before it. Because section 6—210 "by its obvious terms prohibits operation of a motor vehicle under a foreign license when the Illinois license had been revoked," and further requires that a license be obtained under the Code, the defendant could properly be convicted under section 6—303(a). 100 Ill. App. 3d 831, 837, 426 N.E.2d 1214, 1217.

We conclude that section 6—210 must be read in conjunction with section 6—303 as well as other relevant provisions of the Code for the overall scheme intended by the legislature. Section 6—210 cannot be considered in isolation. While it is true that penal statutes should be construed strictly in favor of an accused, it is equally true that they should not be so rigidly construed as to defeat the intent of the legislature. (*People v. Bratcher* (1976), 63 Ill. 2d 534, 349 N.E.2d 31.) We find no ambiguity in these provisions; rather, the enumerated Code sections provide a clear, precise, and consistent pattern.

■ Wisconsin is not a party State to the Driver License Compact. Defendant's Illinois license was revoked but not reinstated pursuant to sections 6—208 and 6—210. We therefore find that the defendant was indeed properly charged and convicted under section 6—303(a) of our Code for driving with a revoked Illinois license.

Granted, the record is clear that the Wisconsin licensing authority had knowledge of the defendant's revocation in Illinois when it issued him a Wisconsin driver's license in 1984. We recognize that the principle of comity—the deference one sovereign owes another—is an important consideration, and we find it reflected in our Code (Ill. Rev. Stat. 1983, ch. 95½, pars. 6—102(2), 6—103(7), 6—704). However, we believe our State's clearly avowed interests in safeguarding its highways, and providing for "the public safety or welfare" (Ill. Rev. Stat.

1983, ch. 95½, par. 6—208), undisputedly take precedence. The Compact provides substantial assurance that these same goals are also being met by other party States in the issuance of licenses and the regulation of its drivers. It is therefore entirely proper to charge and convict someone under section 6—303(a) where that person's Illinois license remains revoked, even though that person exhibits a valid license from a non-Compact State.

The matter before us now is not similar to that addressed in *People v. Eberhardt* (1985), 138 Ill. App. 3d 148, 485 N.E.2d 876, where the defendant allowed his Illinois license to expire and acquired a Texas driver's license in its place. Upon a return visit to Illinois, the defendant was convicted of a DUI violation, and the Secretary of State revoked his previously expired Illinois license. However, the Secretary neglected to inform Texas authorities of this revocation. Consequently, the court in *Eberhardt* held the defendant had a perfect right to drive in Illinois, because neither the Texas license nor the defendant's privilege to drive as a nonresident in Illinois was affected by the mere revocation of a recently expired Illinois license. Further, *People v. Brown* (1983), 118 Ill. App. 3d 609, 455 N.E.2d 287, also advanced by the defendant as analogous, is clearly inapposite. The court in *Brown* held that a resident of Iowa whose Iowa license was revoked could not be prosecuted under section 6—303(a) for driving in Illinois. There, the defendant was never issued an Illinois license; the court determined that section 6—303(a) could only be applied to a driver who was operating a vehicle on a revoked Illinois license.

■ Finally, we note in passing the defendant's misguided contention that because only his *license* or *permit* was revoked under section 6—205(a)(2), and not his *privilege* to drive in the State of Illinois, he was therefore legally permitted to drive within this State by virtue of a valid foreign license. It is a matter of common knowledge that the operation of a motor vehicle is a privilege, and not a right. A driver's license, though, is issued in recognition of that privilege. The privilege to drive, and the license which is given so that the privilege may be exercised, are by no means separate and divisible.

For the foregoing reasons, we hold that the defendant was charged and convicted under the proper statute of the Illinois Vehicle Code, and we affirm the judgment of the circuit court of Livingston County.

Affirmed.

McCULLOUGH, P.J., and WEBBER, J., concur.