2016 IL App (3d) 150710

Opinion filed October 13, 2016

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2016

| | | |
|---|---|---|
| *In re* MARRIAGE OF | ) | Appeal from the Circuit Court |
| | ) | of the 9th Judicial Circuit, |
| AARON TODD EASTBURG, | ) | Knox County, Illinois. |
| | ) | |
| Petitioner-Appellee, | ) | |
| | ) | |
| and | ) | Appeal No. 3-15-0710 |
| | ) | Circuit No. 06-D-114 |
| ALICIA LYNN EASTBURG, n/k/a Alicia | ) | |
| Lynn Condreay, | ) | |
| | ) | Honorable Scott Shipplett, |
| Respondent-Appellant. | ) | Judge, Presiding. |
| | ) | |

JUSTICE SCHMIDT delivered the judgment of the court, with opinion.
Presiding Justice O'Brien concurred in the judgment and opinion.
Justice Carter specially concurred, with opinion.

**OPINION**

¶ 1        Aaron Eastburg, petitioner, is obligated to pay child support to his former spouse,

respondent, Alicia Eastburg. Originally, the parties stipulated to the amount of Aaron's child

support payments. The figure—$511 bimonthly—was calculated at 28% of his net income. The

parties also agreed to equally divide the cost of medical expenses not covered by insurance for

the minors. Alicia later petitioned to increase Aaron's child support payments due to increases in

his income. After the most recent petition, the parties stipulated to an increased payment amount based on Aaron's 2014 net income. Alicia then sought 28% of Aaron's 2014 federal income tax refund and a decrease in her obligation for the minors' medical costs not covered by insurance. The trial court denied Alicia's requests. She appeals both denials. We affirm.

¶ 2                                                          BACKGROUND

¶ 3          Aaron and Alicia married in 1998. They have two minor children. The circuit court of Knox County entered a judgment for dissolution of the marriage in December 2006. Shortly thereafter, Aaron and Alicia agreed to a joint parenting order wherein Alicia retained physical custody of the minors, but both had legal custody. The order established Aaron's child support payment at $511 bimonthly. The amount allegedly represented 28% of Aaron's net income. Aaron and Alicia split the cost of uninsured medical expenses evenly.

¶ 4          In October 2014, Alicia filed a motion to modify child support. She alleged that Aaron's income had increased, and the trial court's order should be modified to reflect the change. Alicia further argued she was entitled to a reduction in her obligation for the minors' uninsured medical expenses. She averred that covering half of the expenses placed an inordinate burden on her because of the increased disparity in their incomes.

¶ 5          The parties proceeded to discovery. Aaron produced his income records, including W-2s and federal income tax returns from 2012, 2013, and 2014. Aaron intentionally withheld taxes more than necessary throughout each year and received federal income tax refunds after his tax obligations were properly calculated. For tax year 2014, Aaron's federal income tax refund was $14,239.

¶ 6          Ultimately, Aaron agreed that his net income had increased. At a hearing in May 2015, the parties stipulated that Aaron's child support payments would be $721 bimonthly, applied

2

retroactively to the date Alicia filed her petition. Alicia's counsel next claimed Alicia was entitled to precisely $3,986.92—28% of Aaron's 2014 federal income tax refund—and a reduction in her obligation for the minors' uninsured medical expenses.

¶ 7        The trial court later issued an opinion letter denying Alicia's request for 28% of Aaron's 2014 federal income tax refund. The trial court noted that the parties had already agreed to an increase in child support payments, and this was not a case where the payor was "gam[ing] the system" because his overwithholding "did not affect the current support computation." The trial court also denied Alicia's request for a decrease in her uninsured medical expense obligation. The trial court reasoned that the parties still had the same employment they had when they originally agreed to share the cost of uninsured medical expenses, and the current disparity in their respective incomes was not so great that equity demanded amending their agreement.

¶ 8        At Alicia's insistence, the court issued an order based on its opinion letter. Alicia filed a motion to reconsider which the trial court denied. Alicia appeals.

¶ 9        ANALYSIS

¶ 10        Alicia argues that under the plain language of section 505(a)(3) of the Illinois Marriage and Dissolution of Marriage Act (Act) (750 ILCS 5/505(a)(3) (West 2014)), the trial court erred in finding that: (1) she is not entitled to 28% of Aaron's federal income tax refund; and (2) she is not entitled to a reduction in her proportion of the minors' uninsured medical expenses.

¶ 11        I. 2014 Federal Income Tax Refund

¶ 12        Generally, we review a trial court's determination of net income for an abuse of discretion. *In re Marriage of Minear*, 181 Ill. 2d 552, 560 (1998). Whether a tax refund is income under the child support provision of the Act, however, is an issue of statutory construction we review *de novo*. See *In re Marriage of Shores*, 2014 IL App (2d) 130151, ¶ 24.

¶ 13        Section 505(a)(3) defines "net income" as income from all sources minus, *inter alia*, "properly calculated" federal and state taxes. 750 ILCS 5/505(a)(3)(a), (b) (West 2014). The disparity between federal income tax withheld and federal income tax paid should be accounted for in calculating child support payments under the Act. See, *e.g.*, *In re Marriage of Ackerley*, 333 Ill. App. 3d 382, 391 (2002); *In re Marriage of Pylawka*, 277 Ill. App. 3d 728, 732-33 (1996). Section 510 of the Act prohibits Alicia from receiving payment prior to the date or her petition in October 2014. 750 ILCS 5/510(a) (West 2014); *In re Marriage of Petersen*, 2011 IL 110984, ¶ 18. Thus, if Alicia was entitled to any portion of Aaron's 2014 federal income tax refund, it would be limited to the share Aaron earned from October of that year forward.

¶ 14        Whether Aaron's tax withholding was properly calculated each pay period according to the Internal Revenue Service is not always dispositive. The relevant inquiry is whether the payor's child support payment was calculated properly based on his or her actual net income. In this instance, we need not answer the question. The trial court did not make the calculation, the parties did. Aaron and Alicia stipulated to Aaron's child support obligation in open court in May 2015. This was after the close of discovery while Alicia had Aaron's 2014 W-2 and federal income tax return. If the stipulated amount of Aaron's child support obligation is not 28% of his 2014 net income, the parties are at fault, not the trial court. Even if we were to assume error, Alicia cannot complain of error which she injected into the case. *In re Detention of Swope*, 213 Ill. 2d 210, 217 (2004).

¶ 15        At oral arguments, Alicia's counsel agreed there was no fraud that induced the parties to stipulate to Aaron's payment amount. In response to direct questioning from this court, Alicia's counsel stated: "All of the income that Mr. Eastburg had in 2014 was not known at the time that

4

a new child support level was set. \*\*\* The over withholding didn't become apparent until we saw his—his tax return—until after it was filed in 2015."

¶ 16     Counsel's claims are contradicted by the record. At the hearing in May 2015, immediately after stipulating to Aaron's new child support payment, counsel argued Alicia was entitled to 28% of Aaron's 2014 federal income tax refund. Counsel's argument was not based on a theoretical figure. As discussed previously, he argued for a precise amount based on Aaron's known 2014 federal income tax return. Alicia knew of the refund at the time she stipulated to Aaron's new child support obligation.

¶ 17     Alicia does not claim Aaron's payments should increase. Alicia argues, rather, that under the Act, a payor's tax refund should *always* be considered income for child support purposes. Her counsel stated that "historically" where he practices "if there's a refund" judges consider it income for child support purposes. This argument is not supported by our reading of section 503 or the case law cited by counsel. Aaron's federal income tax refund for 2014 was part of his net income for 2014—not an addition to it. A payor's federal income tax refund is not always income for child support purposes. See *In re Marriage of Ackerley*, 333 Ill. App. 3d at 391. In this case, it would duplicate Aaron's child support obligation.

¶ 18     Aaron intentionally withheld income from his paycheck, paying every pay period more than he would eventually owe in taxes. This is no different than placing the same amount of money in a savings account that earns no interest or burying it in his backyard. In the absence of fraud, Alicia is not entitled to any percentage of Aaron's federal income tax return. Alicia also argues that the trial court found that Aaron "was gam[ing] the system" with respect to his withholding. This is 180 degrees from correct. The trial court explicitly found that Aaron was not gaming the system. The record is also clear that Aaron was not "hiding the ball" from Alicia. She

5

had Aaron's W-2 and federal tax return when she stipulated to his child support payments. To continue our analogy, Aaron receiving his 2014 federal income tax refund is identical to him withdrawing money from a zero interest savings account or digging it back out of a hole. Therefore, we affirm the trial court's ruling on this issue.

¶ 19                                    II. Medical Expenses Not Covered By Insurance

¶ 20         Alicia also argues the trial court erred in failing to reduce her obligation to pay the minors' uninsured medical expenses. She claims that the disparity between the parties' net incomes increased substantially since they initially agreed to split costs equally. In response, Aaron asserts that the parties have approximately equal income after factoring in his child support payments to Alicia.

¶ 21         We review the trial court's ruling on this issue for an abuse of discretion. *In re Marriage of Logston*, 103 Ill. 2d 266, 287 (1984). Abuse of discretion only "occurs where no reasonable man would take the view adopted by the trial court. [Citation.]" *In re Marriage of Carpenter*, 286 Ill. App. 3d 969, 973 (1997). Based on the record before us, we cannot say the trial court abused its discretion.

¶ 22         In claiming there is a substantial disparity in their incomes, Alicia compared the parties' gross incomes and emphasized the increase in Aaron's income since the time of their original agreement. Nowhere in her argument on this point, however, does Alicia disclose a straightforward account of her own income, which includes child support payments she receives from Aaron. Comparing the parties' gross incomes without factoring in tax rates, child support, and other expenses does not establish that the trial court abused its discretion. It was Alicia's burden to show an abuse of discretion by the trial court. She failed to do so. We are not going to

scour the record for support for her argument. *New v. Pace Suburban Bus Service*, 398 Ill. App. 3d 371, 384 (2010). Accordingly, we affirm the trial court's judgment on this issue.

¶ 23                                            CONCLUSION

¶ 24         For the foregoing reasons, we affirm the judgment of the circuit court of Knox County.

¶ 25         Affirmed.

¶ 26         JUSTICE CARTER, specially concurring.

¶ 27         I concur with the majority's opinion but write separately to further address Alicia's argument that a tax refund should always be considered additional income for child support purposes. Whether the overwithheld portion of a person's tax return should be considered additional income when determining a child support obligation depends on the particular circumstances of each case. See *In re Marriage of Blume*, 2016 IL App (3d) 140276, ¶¶ 38-47 (holding that it was inappropriate to consider the maintenance-receiving spouse's tax return, which consisted of overwithholdings and certain tax credits, as additional income for the purpose of determining her gross income to calculate her maintenance award); *In re Marriage of Ackerley*, 333 Ill. App. 3d 382 (examining the details of the support-paying parent's tax return when determining whether his tax refund should be considered additional income when calculating his child support obligation); *In re Marriage of Pylawka*, 277 Ill. App. 3d 728 (1996) (providing that when an obligor parent has an overwithholding of income taxes deducted from his pay, thereby overpaying his income tax, the disparity that exists between the amount of withheld taxes and the amount of taxes actually paid should be added back into his net income for the purpose of determining his child support obligation).

¶ 28         When calculating child support based on "net income" in many circumstances it would be proper to add the amount overwithheld to the amount of the person's take-home pay in order

7

to determine that person's true "net income." See *Blume*, 2016 IL App (3d) 140276, ¶ 39. However, in this case, child support was not calculated based on Aaron's take-home pay or a calculated amount of net income on the record during the hearing, but on a stipulation that the parties made, with Alicia having copies of Aaron's applicable W-2 and federal income tax return. Alicia having Aaron's W-2 and tax return provided her with sufficient information to determine Aaron's "net income" prior to making a stipulation to the amount of child support. Thus, when the trial court noted the parties had agreed to an increase in child support, he knew or assumed the amount was properly calculated, especially since there was no indication by the parties that the stipulated amount was a deviation from the statutory support guidelines. See 750 ILCS 5/505(a)(2) (West 2014) (providing the statutory support guidelines are to be applied unless the trial court finds a deviation is appropriate). That was obviously the reason the trial court noted the overwithholding "did not affect the current support computation" and Aaron was not gaming the system. Therefore, to take 28% of the total refund would, in essence, count a portion of Aaron's net income twice. To allow Alicia to receive a portion of Aaron's tax refund, despite her prior stipulation to the amount of child support, would also allow her to make an improper retroactive modification to the amount of Aaron's child support obligation.